**WILLIAM H. RICKER**
Attorney at Law
1661 N. Swan Road, suite 154
Tucson, Arizona  85712
Telephone: (520) 795-0477
Fax: (520) 795-1085
William H. Ricker, Esq. - SB#007135; PCC 47924

**GUST ROSENFELD P.L.C.**
One S. Church Ave., Suite 1900
Tucson, Arizona  85701-1627
(520) 628-7070
Peter Collins, Jr., Esq. – SB#012666

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| EILEEN FINEGAN, a single woman,<br><br>Plaintiff,<br><br>vs.<br><br>TUFESA USA, L.L.C., an Arizona Corporation,<br><br>Defendant | No. 07-CV-693<br><br>**PLAINTIFF'S RESPONSE TO TUFESA USA, L.L.C'S MOTION FOR SUMMARY JUDGMENT (Amended)**<br><br>**(Oral hearing requested)**<br><br>*Hon. Frank R. Zapata* |

Plaintiff opposes Defendant, TUFESA USA, L.L.C.'s (hereinafter "Tufesa USA") Motion for Summary Judgment.  This Response is supported by an accompanying Statement of Facts, and also incorporates in full Plaintiff's Response to Autotransportes Tufesa's Motion to Dismiss.

Autotransportes Tufesa and Tufesa USA have created an entire overlapping corporate structure which is the equivalent of a joint venture, for the purpose of tort liability in this case. This combined corporate structure was formed to take full advantage of American contacts, and using its combined forces to provide a seamless transportation system between

PC2:pc2  276571.2  8/22/2008

1  Mexico and the United States.

2  The fiction attempted to be created by Autotransportes Tufesa and Tufesa USA
3  lawyers, in order to avoid just the type of bodily injury liability alleged in this lawsuit is
4  transparent, and should be seen by this Court for what it is: A superficial attempt to avoid
5  liability exposure to individual passengers, while at the same time taking full advantage of the
6  markets and protections provided by the United States.

7  This response is supported by a combined Statement of Facts, which supports
8  both this response and Plaintiff's Response to the Autotransportes Tufesa Motion to Dismiss,
9  since the factual issues are entirely inter-related, and an understanding of the business model of
10 one aspect of this combined enterprise is incomplete without examination of the combined
11 business model of both entities.

12 **HE BUS RIDE.**

13 Eileen Finegan started her journey in Guadalajara, Mexico, when she bought a
14 bus ticket from Autotransportes Tufesa, for bus passage from Guadalajara to her home in
15 Tucson, Arizona. Her one-way, non-stop bus ticket provided her passage from Guadalajara to
16 Tucson, non-stop, with no change of bus, bus line or company, to her knowledge. Eileen was
17 never advised that some "other" bus company would provide a portion of the non-stop service
18 to Tucson, and the ticket provides no such details or explanation. (SOF#1, Declaration of
19 Eileen Finegan, attached to SOF as Exhibit #A)

20 On the evening of July 10, 2007, the driver of her bus made a tragic mistake,
21 driving the bus off the highway, where it tumbled into a ravine, near Benjamin Hill in Sonora,
22 Mexico, killing several passengers and injuring others, including Eileen Finegan. (SOF#2, and
23 accident report, attached to SOF as Exhibit 2)

24 Eileen was treated initially at a hospital in Mexico, but then flew home to
25 Tucson, where she has received the bulk of her medical care.  Her injuries appear to be
26 permanent. (SOF#3)

PC2:pc2  276571.2  8/22/2008

**CORPORATE MANAGEMENT OF AUTOTRANSPORTES TUFESA AND TUFESA USA ARE INTERMINGLED AND OVERLAPPING.**

The corporate activities of Autotransportes Tufesa and Tufesa USA are intermingled and all are purposefully directed at cross-border bus traffic between Mexico and the United States. Their combined bus routes commence in deepest Mexico and proceed to Tucson, Phoenix, Las Vegas, and Los Angeles. (SOF #10).

Autotransportes Tufesa's website, which bears the same logo as Tufesa USA's website, asserts that Autotransportes Tufesa has provided services throughout Mexico and to the United States since 1994, and that its buses provide passage from Mexico to the United States, without ever mentioning any other entity, organization, or requirement that another business or carrier provide a portion of the transportation. (SOF# 14, 15 and 16.)

**THE TWO COMPANIES SHARE COMMON MANAGEMENT.**

Plaintiff's counsel took the deposition of Luis Alberto Luna Medina, the "General Manager" of Autotransportes Tufesa, where he has worked for 13 years. (SOF #5)

Mr. Medina is also "General Manager" for Tufesa, USA. (SOF#5). In this position, Mr. Medina is paid exclusively by Autotransportes Tufesa. He receives no payment for either salary, benefits or other employee expenses by Tufesa USA, other than to receive dividends for his ownership of stock in Tufesa USA, at the end of the year. (SOF#6).

The organizations of Autotransportes Tufesa and Tufesa USA overlap, such that the management and organization of Tufesa USA are provided by an employee of Autotransportes Tufesa, who is paid in Mexican money to supervise and manage Tufesa USA. (SOF#6 and 8)

Mr. Medina works for TUFESA, USA in his office in Obregon, Sonora Mexico. He spends three to four days in Arizona, every three or four weeks. (Medina deposition p. 9, lines 4-10).

> Q.   "So doesn't it make sense that you are really an employee of Autotransportes Tufesa and you are paid by Autotransportes Tufesa

PC2:pc2  276571.2  8/22/2008

3

1  **to manage Tufesa USA?**
2  A.      Well it would make sense to think like that." (SOF #7)

3  When Mr. Medina goes to his office, where he works on behalf of Tufesa USA,
4  he performs these functions in Obregon City, Sonora.  (SOF#7)

5  Mr. Medina, when asked to describe his obligations as General Manager for
6  Autotransportes Tufesa, discussed "financial situation, human resources, fleet maintenance, bus
7  business profitability, package business profitability, information systems control". (SOF#11)
8  (p. 10, lines 9-14).

9  In describing his daily duties as General Manager for Tufesa USA, he stated
10 "check in on day-to-day operations…management and payment for services, and seeking new
11 markets, growth." SOF#11).  Mr. Medina cites the business of Tufesa USA as "leasing buses
12 for international services".  Tufesa USA leases all of its buses from Autotransportes Tufesa
13 (SOF#12).

14 Autotransportes Tufesa and Tufesa USA share a common law firm, Fennemore
15 Craig. (SOF#21) Fennemore Craig acted on behalf of Autotransportes Tufesa in the drafting of
16 the Master Vehicle Lease Agreement between Autotransportes Tufesa and Tufesa USA.

17 Mr. Medina executed that document in two different places, based upon his two
18 different "hats":  First as Secretary for Autotransportes Tufesa, and second as General Manager
19 for Tufesa USA. (SOF#20).

20 **THE COMPANIES SHARE EXPENSES**

21 The business of Autotransportes Tufesa and Tufesa USA overlap.  For example,
22 Tufesa USA pays Autotransportes Tufesa a lease fee, which constitutes a portion of the fares
23 paid by passengers for the "Mexican share of the route".  (SOF#22)

24 Tufesa USA fuels the Autotransportes busses in Phoenix before they return to
25 Mexico. (SOF#22). Tufesa USA absorbs all costs of fuel used in the United States, but
26 Autotransportes Tufesa performs a calculation every few weeks as to the cost of fuel used in

PC2:pc2  276571.2  8/22/2008

4

1   the United States and the cost of fuel used in Mexico. After the calculation is performed, a

2   "net" check is written to balance the interest of both companies in the Mexican and American

3   portions of the travel, profit and expense. (SOF#22)

4         The decision about how much is paid to Tufesa USA by Autotransportes Tufesa

5   is made by Mr. Medina, on behalf of Autotransportes Tufesa. (SOF#23).

6   **AUTOTRANSPORTES TUFESA PAYS TAXES IN THE UNITED STATES**.

7         Autotransportes Tufesa pays income taxes in the United States.  For example, a

8   form 1042-S for the year 2007, shows that Tufesa USA sent $123,000.00 to Autotransportes

9   Tufesa, but withheld $37,000.00 for taxes.  Those funds were deposited with the United States

10  Treasury, but Autotransportes Tufesa filed no tax return, essentially waiving its claim for a

11  refund of the $37,000.00.  It did the same in 2006, waiving a refund claim for $32,000.00.

12  Effectively, Autotransportes Tufesa paid $37,000.00 in taxes for the year 2007, and $32,000.00

13  in United States taxes for the year 2006.  (SOF#26)

14  **THE COMPANIES USE A COMMON WEBSITE.**

15        Autotransportes Tufesa and Tufesa USA cite the same promotional information

16  on their websites.  In fact, Mr. Medina stated that they provide the same information:

17        Q.    **"Is this from the Tufesa USA website or from the Autotransportes website?**

18        A.    **It's the same site for…it's the same site.**
      Q.    **Okay, for both companies, correct?**

19        A.    **Yes.**

20  (SOF#14, 15 & 16)

21

22        The website from Autotransportes Tufesa states its "vision" as, in part,

23  "becomes an enterprise group that could be distinguished by the solidity of its structures and

24  the strength of its organization able to influence nationally and internationally". (SOF#17)

25        Mr. Medina explained that "vision" as follows: "To provide our services

26  beyond Mexico's borders."

PC2:pc2  276571.2  8/22/2008

5

> Q. "You have succeeded in doing that, have you not?
> A. Yes.
> Q. And you do that by providing services to Tucson, Phoenix, Las Vegas and Los Angeles?
> A. Yes."

(SOF# 17).

**THE COMPANIES USE COMMON UNIFORMS**

The organizations of Autotransportes Tufesa and Tufesa USA purchase uniforms from the same vendor.  They appear the same and they have the same image.  Mr. Medina admitted that a passenger looking at the uniform of a driver from Autotransportes Tufesa and the uniform of a Tufesa USA driver, would not know the difference. (SOF#13)

**THE TWO COMPANIES ARE A JOINT VENTURE, FOR THE PURPOSE OF LIABILITY IN THIS CASE.**

Oscar Luna Fernandez and his children own a controlling interest in Autotransportes TUFESA, and they own approximately 50% of TUFESA USA. (SOF#24) Of the 15 persons who are owners of Autotransportes Tufesa, nine are also members of TUFESA USA, L.L.C. (SOF#25)

Plaintiff alleges that these facts demonstrate an overlapping, commonly managed, commonly operated joint venture, totally invisible to a knowledgeable passenger such as Eileen Finegan, dedicated to providing bus transportation from Mexico to Arizona, and from Arizona to Mexico.  It is purposefully directed to serve the people of Arizona.

**M E M O R A N D U M**

Plaintiff alleges that these facts demonstrate an overlapping, commonly-managed, commonly-operated joint venture, invisible to a knowledgeable passenger such as Eileen Finegan. The venture was dedicated to providing bus transportation from Mexico to Arizona, and from Arizona to Mexico.  It is purposefully directed to serve Arizona.

PC2:pc2  276571.2  8/22/2008

1  Defendant Tufesa USA's principal position is that it has nothing to do with
2  Autotransportes Tufesa's business, and that it did not employ the bus driver whose fault caused
3  Eileen Finegan's injuries.  It claims, at page 4, lines 9-11:  "For a defendant to have a duty to
4  control a third person's conduct, they must have had a special relationship, such as a parent-
5  child, master-servant, possessor of land-licensee, or guardian ward."

6  But Tufesa misses the point, and this Court should not be diverted.  What Tufesa
7  omits is the nature of its relationship with Autotransportes: a common scheme or plan for a
8  common purpose, with common tools and employees: in other words, a joint venture.

9  Under Arizona law, a joint venture causes both venturers to share joint liability
10 to a person or entity which is damaged or injured from the fault of either venturer. See *Tanner*
11 *Companies v. Superior Court*, 144 Ariz. 141, 696 P.2d 693 (Ariz. 1985), where the Court held:

> **Joint venturers share full liability in agency and in tort.  *Sparks v. Republic National Life Insurance Co*., 132 Ariz. 529, 647 P.2d 1127 (1982).  A joint venture, which shares the benefits and liabilities of the separate acts of each individual joint venturer, should also be allowed to benefit from the qualifications of each participant.**

(696 P.2d 695)

Surely, the Defendants will deny the existence of a Joint Venture here, but the common enterprise between Tufesa USA and Autotransportes Tufesa has all the earmarks and substance of a classic joint venture.  A joint venture does no need extensive documentation or records, merely a common plan or scheme, an agreement to share proceeds from the venture, a right to control, and participation in profits.  All of these factors exist here, including the right to control, since the same individual acts as General Manager for both entities!

The *Tanner* Court identified the factors necessary to find the existence of a Joint Venture, for the purpose of assessing liability, all of which factors exist in this case:

> **To constitute a valid joint venture under Arizona law, there must exist:  (1) a contract; (2) a common purpose; (3) a community of interest; (4) an equal right to control; and (5) participation in the profits and losses.  *Ellingson v. Sloan*, 22 Ariz.App. 383, 527 P.2d 1100 (1975).  Based upon this standard, we can find no**

PC2:pc2  276571.2  8/22/2008

7

> **abuse of discretion in the trial court's ruling that the verbal joint venture agreement, formalized in writing following the city hearing, constituted a valid joint venture under Arizona law.  Nor does the fact that Rein and Dahl entered into the agreement merely to qualify for the resident contractor preference invalidate the contractual arrangement as a "sham or ruse."**

(696 P.2d 695)

In *Tanner*, two contractors agreed verbally to jointly bid on a contract for construction with the City of Phoenix.  A competitor challenged the efficacy of the joint venture, and the Court upheld the existence of the joint venture to complete the common purpose of the construction project.

Here, Autotransportes pleads that it is a Mexican entity, and cannot run busses into the United States. Therefore, they rely on each other's participation in order to perform their most basic function.  Since it needed a United States partner to complete its network, and to offer transportation into the United States, it formed Tufesa USA, an LLC made up of fifteen members, nine of whom are also shareholders of Autotransportes.  Autotransportes assigned Luis Alberto Luna Medina, the son of its principal owner, Oscar Luna Fernandez, to form Tufesa USA.

Mr. Luis Alberto Luna Medina is corporate Autotransportes Tufesa's Secretary and General Manager.  He then also became the General Manager of Tufesa USA. The two entities then entered into a Master Vehicle Lease Agreement, whereby Tufesa leases Autotransportes busses magically, once they enter the United States. The collective effort of Autotransportes and Tufesa has completed a full schedule of bus service all the way from deepest Mexico to Las Vegas, with four other American stops along the way, including Tucson.

It is not necessary for the relationship between two Joint Venturers to be a "sham" as suggested by Defendant, nor does Plaintiff wish to pierce the corporate veil. Plaintiff merely asserts liability against both entities as participants in a common scheme to provide transportation into the United States from Mexico, a classic joint venture.

Arizona law permits a joint venture to be created by either express or implied

PC2:pc2  276571.2  8/22/2008

conduct of the venturers.  See *West v. Soto*, 85 Ariz. 255, 336 P.2d 153 (Ariz. 1959), where the Court held:

> **A joint adventure whether it is for business or social purposes must rest upon an agreement, either express or implied between the parties thereto.  Whatever the common purpose or community of interest may be, it must appear as a part of the agreement either expressly or by necessary implication, that each of the parties to such joint adventure has authority to act for all in respect to the control of the means or agencies employed to execute such common purpose.  *Lampe v. Tyrell*, 200 Wash. 589, 94 P.2d 193; *Poutre v. Saunders*, 19 Wash.2d 561, 143 P.2d 554.  The above cases involved automobile accidents.**

[85 Ariz. 262]

The Court continued, to say that any such determination of the existence or lack thereof of a joint venture is a fact question, which must be determined by a jury:

> **In *Edwards v. Washkuhn,* 11 Wash.2d 425, 119 P.2d 905, the court said in substance that, where the question of joint adventure is raised each one of these cases must be decided upon its own facts and unless the court can say as a matter of law that the parties were engaged in a joint adventure he must submit the question of fact to the jury.**

[85 Ariz. 262]

See also *Mercer v. Vinson,* 85 Ariz. 280, 336 P.2d 854 (1959), where the Court held that the facts related to the existence of a joint venture were for the jury to determine.

> **The intent of the contracting parties to form a partnership is always an essential element of a partnership relation as between the parties themselves, but as to third parties, the relation will be determined from the facts rather than the conclusions of the co-partners as to the nature of their business relationship.  May v. Sexton, 68 Ariz. 358, 206 P.2d 573, 575; cf. *Eastlick v. Hayward Lumber & Investment Co.*, 33 Ariz. 242, 263 P. 936.  The informal agreement under which the appellees put their plan into operation did not specifically include any understanding that Rima was to be simply the agent of Vinson in renting the trailer and collecting the rent.  The jury was entitled to consider the actual facts of what occurred and to draw from that the inference as to the nature of the business relationship.  It certainly was not bound by the conclusions which Rima seeks to place on the facts.**

(336 P.2d at 859

The Defendant will surely argue that TUFESA USA lacked a common right of control, but Plaintiff contends that TUFESA USA does share a right of control over its busses with Autotransportes, both according to its Master Vehicle Lease, and due to the sharing of

PC2:pc2  276571.2  8/22/2008

control by their common "General Manager", Mr. Medina.  The fact that these two entities were responsible for different ends of the same trip from Guadalajara to Tucson is of no consequence: they were clearly in control together of the overall trip, and enterprise.

However, even if all classic elements of a joint venture are missing, the liability for the joint venture remains.  See *Farr v. Transamerica Occidental Life Ins. Co. of California,* 145 Ariz. 1, 699 P.2d 376 (Ariz.App.1984), where the Court held that specific adherence to all criteria of a "classic" joint venture is not required.  Citing *Sparks, supra,* the Court held that liability attaches, despite the absence of some "classic" elements of the joint venture:

> **Looking to those features, we note that here there was no proof of profit and loss sharing and no proof of a joint right to control.  Thus, the classical elements of a joint venture are missing.  But if that is true here, it was also true in Sparks.   In Sparks the court found that a company that issued certificates of coverage, billed and collected premiums, handled the investigation and payment of claims, and distributed brochures to induce the purchase of policies was engaged in a joint venture with the insurer so that both owed a common duty to the insureds to act in good faith.  132 Ariz. at 540, 647 P.2d at 1138.**

(699 P.2d at p.386.)

There exist in this case enough elements of a joint venture for this Court to find the common enterprise and joint liability required to find TUFESA USA to be a joint venturer with Autotransportes TUFESA, and therefore co-responsible for the liability for the injuries suffered by Eileen Finegan.

Finally, if this Court feels that there are factual issues to be resolved regarding the existence or the extent of the joint venture relationship between the Defendants, then a jury should make that final determination after examination of all the facts. *West, supra.*

WHEREFORE, Plaintiff, Eileen Finegan, respectfully moves the Court to deny Tufesa USA's Motion for Summary Judgment. Given the number of facts at issue between the parties, the connections between the bus entities, and the sharp differences between the parties as to interpretation of the facts in existence, Plaintiff respectfully submits that this

PC2:pc2  276571.2  8/22/2008

10

1  determination is one which should be left to a fully-informed jury.

2  RESPECTFULLY SUBMITTED this 22nd day of August 2008.

3  GUST ROSENFELD P.L.C.

4  

5  By : /s/ Peter Collins, Jr _____
      Peter Collins, Jr.

6  WILLIAM H. RICKER

7  

8  By : /s/ William H. Ricker _____
      William H. Ricker
      *Attorneys for Plaintiff*

9  CERTIFICATE OF SERVICE

11  I hereby certify that on August 22, 2008, the original of the foregoing Response,

12  Pursuant to Federal Rule Civil Procedure 56(f), was filed electronically, and copies mailed to:

14  Clerk, U.S. District Court
    District of Arizona
    405 West Congress St.
15  Tucson, AZ 85701
    *https://ecf.azd.uscourts.gov*

16  COPY of the foregoing mailed this 22nd day of August, 2008, to:

18  Hon. Frank Zapata
    U.S. District Court
    District of Arizona
19  405 West Congress St.
    Tucson, AZ 85701

20  COPY of the foregoing hand delivered this 22nd day of August, 2008, to:

22  John D. Everroad, Esq.
    Suzanne L. Diaz, Esq.
23  FENNEMORE CRAIG, P.C.
    One South Church Ave., Suite 1000
24  Tucson, AZ 85701-1627
    Attorneys for Defendants

26  By: /s/ Peter Collins, Jr.

PC2:pc2  276571.2  8/22/2008

11